UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
MAXIMANO SILVA,                )
                               )
     Defendant/Petitioner,     )
                               )
          v.                   )  CRIMINAL ACTION NO. 05-10295-PBS
                               )
UNITED STATES OF AMERICA,      )
                               )
     Respondent.               )
_____)
```

**MEMORANDUM AND ORDER**

October 15, 2009

Saris, U.S.D.J.

**I. INTRODUCTION**

In March 2007, following a jury trial, petitioner Maximano
Silva was convicted of conspiracy, aiding and abetting, obtaining
controlled substances by fraud, health care fraud, identity
theft, and aggravated identity theft.  This Court sentenced Silva
to eighty-one months in prison followed by thirty-six months of
supervised release.  The First Circuit affirmed the conviction on
January 23, 2009.  United States v. Silva, 554 F.3d 13 (1st Cir.
2009).

In February 2009, Silva filed a timely motion to vacate
judgment under 28 U.S.C. § 2255, asserting that he received
ineffective assistance of counsel, claiming that counsel: (1)
erroneously advised Silva to waive the statute of limitations and
failed to object to time-barred claims; (2) advised Silva to

agree to the materiality of certain facts, thereby admitting his guilt; (3) failed to object to an incorrect assessment of drug value and the use of incorrect sentencing guidelines at sentencing; and (4) failed to raise a due process objection to the government's unfair delay in indicting him.  After a review of the substantive issues, the motion is **DENIED-IN-PART** and **ALLOWED-IN-PART**, and counsel is hereby appointed to represent the Petitioner on certain issues.

## II. DISCUSSION

Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  The petitioner bears the burden of establishing the need for § 2255 relief, as well as that of showing the need for an evidentiary hearing.  See Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992). "An evidentiary hearing is not required where the section 2255 petition, any accompanying exhibits, and the record evidence 'plainly [reveal] . . . that the movant is not entitled to relief.'"  Id. (quoting Rule 4(b), Rules Governing Section 2255 Proceedings).  Summary dismissal of a section 2255 claim is appropriate when the petition "(1) is inadequate on its face, or

(2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Id. (quotation marks and citation omitted).

To succeed on an ineffective assistance claim, the petitioner must establish that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Review of trial counsel's performance is "highly deferential" and subject to "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[T]he Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense." Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994). Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689.

    1.   <u>Statute of Limitations</u>

        A.   <u>Trial Counsel</u>

Silva asserts that trial counsel provided ineffective

assistance by failing to object on the ground that the statute of limitations had run.  The statute of limitations for all of the charged crimes is five years.  18 U.S.C. § 3282(a).  Silva signed four waivers on March 29, 2005, May 13, 2005, June 23, 2005, and August 28, 2005 which excluded time from any statute of limitations defense.  Although some of the waivers expired before the next waiver was signed, at no point during that period did the statute of limitations run.  The final waiver excluded the days from March 15 to September 22, 2005, a period of 192 days. Thus, consistent with the statute of limitations, Silva could be indicted a total of 5 years and 192 days after the charged conduct occurred.  As for the conspiracy counts, the conspiracy must have still been in existence as of that date (i.e., five years and 192 days before the indictment), and at least one overt act in furtherance of the conspiracy must have been performed after that date.  See Grunewald v. United States, 353 U.S. 391, 396 (1957).

Silva attempts to subtract a number of days from the 192 days waived - claiming that 192 must be reduced by the number of days between the signing of the waivers and the days between the excluded period and the date of the indictment - but his arguments are fallacious.  Silva was indicted on October 27, 2005.  Subtracting 5 years and 192 days from that date is surprisingly complicated.  Silva believes it brings the cutoff date back to April 19, 2000, and that he could only be charged

-4-

for conduct that occurred on or after that date.  The government
believes it brings the date back to April 17, 2000.  After
counting, the Court has calculated the date to be April 18, 2000.
It is not clear what accounts for the different dates.

Even were the government correct, Count Three, charging
Silva with obtaining controlled substances by subterfuge and with
aiding and abetting, was time-barred as it alleges only conduct
occurring on April 15, 2000.  Counts Four and Five, charging
Silva with the same crimes, allege only conduct occurring on
April 17, 2000.  As the likely correct cutoff date was April 18,
2000, these charges may also have been time-barred.  Counts Six
through Twelve, and Fourteen through Fifteen, charging Silva with
the same crimes, allege conduct which occurred after the cutoff
date, as do Counts Sixteen through Nineteen, charging health care
fraud and aiding and abetting, Counts Twenty and Twenty-One,
charging identity theft and aiding and abetting, and Counts
Twenty-Three and Twenty-Four, charging aggravated identity theft
and aiding and abetting, and thus were not barred.  Counts One
and Two, charging conspiracy to obtain controlled substances by
fraud, allege conspiracies which continued past the cutoff date
and various overt acts which occurred after the cutoff date.
Silva was acquitted on Counts Thirteen and Twenty-Two.

The government asserts, in a footnote, supported by neither
legal citation nor affidavit, that the statute of limitations
must be equitably extended because Silva represented that he had

-5-

signed a waiver excluding the time between September 22, 2005 and
October 22, 2005.  The government learned that this was not the
case on October 6, 2005.  The government's theory of promissory
estoppel might extend the statute of limitations until the next
meeting of the grand jury.  Here, the government waited three
weeks to seek an indictment after learning that he had not signed
the waiver, but does not provide any information that a grand
jury was not available until then.  Cf. United States v. Spector,
55 F.3d 22, 25-26 (1st Cir. 1995) (refusing to enforce a waiver
of the statute of limitations where the government failed to sign
the agreement and finding "unpersuasive the government's argument
that contract or estoppel principles warrant enforcement of the
agreement, despite the government's failure to comply with its
plain language. . . .  The government could not reasonably have
relied upon the defendant's offer to extend the statute of
limitations a second time, in the face of the express language in
the second agreement conditioning the waiver on the signature of
all parties and the express language in the first agreement
allowing extensions only in writing and signed by all parties.").

Counsel's failure to raise a statute of limitations defense
as to Count Three (and probably Counts Four and Five) fell below
"an objective standard of reasonableness."  Strickland, 466 U.S.
at 688.  "Where, as here, an attorney fails to raise an
important, obvious defense without any imaginable strategic or
tactical reason for the omission, his performance falls below the

-6-

standard of proficient representation that the Constitution demands." <u>Prou v. United States</u>, 199 F.3d 37, 48 (1st Cir. 1999) (finding ineffective assistance where counsel failed to object to the government's untimely filing of an information charging a mandatory minimum enhancement under 21 U.S.C. § 841).  As this failure to object led to as many as three convictions that would otherwise have been time-barred, there is undoubtedly a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  At least the conviction on Count III must be vacated.

Although some of Silva's counts of conviction may have to be vacated, it is not clear that his sentence must be modified.  Silva was sentenced to a total of 81 months imprisonment.  Silva received 51 months for Counts 16-21, to run concurrently with a sentence of 48 months for Counts 1-12, 14, and 15, but consecutively with a sentence of 24 months on Counts 23 and 24.  Although Silva's sentence of 48 months for Counts 1-12, 14, and 15 could possibly be reduced given that Counts 3-5 must be vacated, this should likely not affect his sentence of 51 months for Counts 16-21, or his consecutive sentence of 24 months on Counts 23 and 24, for a total of 81 months.

Because it is not crystal clear what the cut-off date is, how many counts must be vacated, or what the sentencing implications are, the Court hereby appoints counsel to represent

-7-

Silva on these issues.

      B.   <u>Pre-Trial Counsel</u>

Silva also alleges that counsel's advice to sign the waivers in the first place was ineffective.  This objection is groundless.  A defendant may waive the statute of limitations defense prior to indictment only so long as the waiver is made "knowingly and voluntarily."  <u>Spector</u>, 55 F.3d at 24 (citing <u>United States v. Wild</u>, 551 F.2d 418, 422-24 (D.C. Cir. 1997)).  Courts consider whether or not defense counsel negotiated the waiver and defense counsel's intent in the negotiations.  <u>Wild</u>, 551 F.2d at 423.

The language on the face of the waivers here indicates that defense counsel discussed the waivers with the United States Attorney's Office prior to proposing the waivers to Silva.  All of the waivers include unambiguous language that counsel had fully informed Silva of the consequences and benefits of signing the waivers and that Silva waived his rights.  They note that the waivers came after consulting with Silva and stem from counsel's belief that they were in Silva's best interest.  Each waiver stated that Silva had reviewed the entire document with his attorney.  Both Silva and counsel signed the waivers.  Given that the statute of limitations had not run when the waivers were signed, Silva cannot show that counsel's advice to sign the waivers constituted ineffective assistance of counsel.

-8-

Silva protests that he did not sign the waivers knowingly and voluntarily because the use of oxycontin and Methadone impaired his decision-making skills.  There is no evidence that counsel knew he was under the influence of drugs and was ineffective for letting him sign the waivers.  As for the actual voluntariness of the waivers, Silva did not raise this claim on direct review.  As such, it is procedurally defaulted and the habeas court will not consider it unless the petitioner can show actual innocence or cause and prejudice.  Bousley v. United States, 523 U.S. 614, 622 (1998).  Silva has not alleged actual innocence, and he cannot show prejudice, as the government certainly would have proceeded to indict him had he refused to sign the waivers.  The Court thus will not consider his contention that he did not sign the waivers knowingly and voluntarily.

    2.  Materiality Stipulation

At trial, Silva agreed to a stipulation that a false name or address in a forged prescription is material for purposes of 18 U.S.C. § 1001.  Silva claims that his counsel was ineffective for advising him to agree to this stipulation because it relieved the government of its burden to prove every element of the charge beyond a reasonable doubt.  Silva is incorrect.  The stipulation only relieved the government of its burden to prove that falsely using a doctor's name on a forged prescription is a material element of the offense.  The government was still required to

prove Silva's guilt by showing that he did, in fact, submit such forged prescriptions.  The stipulation was a correct statement of the law.  As such, Silva can show neither error nor prejudice.

3.   <u>Sentencing</u>

Silva asserts counsel was ineffective at sentencing because he failed to object to the use of the 2006 Sentencing Guidelines and the value of the drugs introduced at trial.  Silva argues that the 1999 Guidelines should have been applied to his 2000 conduct and that using the 2006 Guidelines increased his sentence.  Silva also asserts that the value of the drugs was overestimated, which also led to an increased sentence.

The First Circuit addressed Silva's Sentencing Guidelines argument on appeal:

> Generally, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).  However, if the use of that guideline results in a higher sentence than the guideline in existence at the time of the conduct, it raises ex post facto concerns.  <u>United States v. Harotunian</u>, 920 F.2d 1040, 1041-42 (1st Cir. 1990) (employing guidelines in effect at time of offense). We look to the date of the last charged offense and the then-existing guidelines to determine whether an ex post facto issue exists.  <u>United States v. Cruzado-Laureano</u>, 404 F.3d 470, 488 (1st Cir. 2005); U.S.S.G. § 1B1.11 cmt. 2 ("[T]he last date of the offense of conviction is the controlling date for ex post facto purposes.").  Thus, the correct comparison is between the 2006 Guidelines, which the district court employed, and the 2004 Guidelines, in effect on the date that Silva's last offense of conviction was completed.  The 1999 guidelines are inapplicable.  See <u>Cruzado-Laureano</u>, 404 F.3d at 488 ("[I]t will not be necessary to compare more than two manuals to determine the applicable guideline range-the manual in effect at the time the last offense of conviction was completed

and the manual in effect at the time of sentencing.").
Our analysis of the 2004 and 2006 Guidelines reveals no
relevant differences that would affect Silva's
sentence.

Silva, 554 F.3d at 22.  "[I]ssues disposed of in a prior appeal

will not be reviewed again by way of a 28 U.S.C. § 2255 motion."

Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994)

(quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir.

1967)).  Silva's claim thus fails as it was previously raised and

rejected on direct appeal.

Counsel likewise was not deficient for failing to contest

the value of the drugs as $35,520.  Silva admitted at the

sentencing hearing that the street value of the drugs was

$35,520.  Silva, 554 F.3d at 22.  As there was no basis for an

objection, counsel's performance regarding the drugs was not

ineffective.

    4.  Unfair Delay

Silva contends the government intentionally and unfairly

delayed issuing his indictment with the foreknowledge that he

would commit additional crimes.  Silva claims the delay led to an

increase in his sentence because it allowed him to commit more

crimes and the Sentencing Guidelines were updated, which led to a

harsher sentence.  Silva also alleges that a more timely

prosecution would have allowed his federal sentence to run

concurrently with his state sentence.

For pre-indictment delay "[t]o rise to the level of a due

-11-

process violation," it "(1) must have 'caused substantial prejudice to [defendant's] rights to a fair trial' and (2) 'was an intentional device' used by the prosecution 'to gain tactical advantages over the accused.'" United States v. DeCologero, 530 F.3d 36, 78 (1st Cir. 2008) (quoting United States v. Marion, 404 U.S. 307, 324 (1971)).  "[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." United States v. Lovasco, 431 U.S. 783, 796 (1977).  A prosecutor does not deviate from the standard of "fair play and decency" if the prosecutor "refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." Id. at 795.

Silva has not put forth any evidence that the government's delay was intentional or that he was prejudiced by it.  The delayed indictment appears to have been a result of the investigatory process, and there is simply no indication that the government's delay was intentional or abnormal.  On May 31, 2000, Hudson Police searched Silva's home pursuant to unrelated charges of identity theft.  Materials found at his home led to a further investigation by the Hudson Police.  Investigation of the state offense resulted in the uncovering of evidence that triggered the federal investigation.  Silva received a target letter from the

-12-

government on February 27, 2003 informing him of the
investigation, and was indicted on October 27, 2005.  Silva
admits that the state search and investigation were unrelated to
his federal crimes

### ORDER

Petitioner's motion to vacate his sentence [Docket No. 179]
is **DENIED-IN-PART** and **ALLOWED-IN-PART**, and the Court hereby
vacates Petitioner's conviction on Count Three.  The Court
appoints counsel to represent Silva as to only the issues
outlined above.

**S/PATTI B. SARIS**
United States District Judge