UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ──────────────────────────── ) | |
| MAXIMANO SILVA,                    ) | |
|                                    ) | |
|     Defendant/Petitioner,          ) | |
|                                    ) | |
|             v.                     ) | CRIMINAL ACTION NO. 05-10295-PBS |
|                                    ) | |
| UNITED STATES OF AMERICA,          ) | |
|                                    ) | |
|     Respondent.                    ) | |
| ──────────────────────────── ) | |

**MEMORANDUM AND ORDER**

May 4, 2010

Saris, U.S.D.J.

**I. INTRODUCTION**

In March 2007, following a jury trial, petitioner Maximano Silva was convicted of conspiracy, aiding and abetting, obtaining controlled substances by fraud, health care fraud, identity theft, and aggravated identity theft.  This Court sentenced Silva to eighty-one months in prison followed by thirty-six months of supervised release.  The First Circuit affirmed the conviction on January 23, 2009.  United States v. Silva, 554 F.3d 13 (1st Cir. 2009).

In February 2009, Silva filed a timely motion to vacate judgment under 28 U.S.C. § 2255, asserting that he received ineffective assistance of counsel.  After a review of the substantive issues, the Court allowed Silva's motion in part as

to his attorney's failure to object to time-barred claims and denied his motion as to all other grounds.  <u>Silva v. United States</u>, 2009 WL 3340150 (D. Mass. Oct. 15, 2009).  Because the exact cut-off date for the statute of limitations was not crystal clear, the Court requested that the government file a brief either confirming or denying the Court's calculation that the statute of limitations was waived only for those events occurring on or after April 18, 2000.  The government now having confirmed that April 18, 2000 is the correct date (and not April 17, 2000 as the government initially believed), the Court hereby **VACATES** Silva's convictions on Counts Three, Four, and Five.[1]  As vacating the counts does not alter Silva's sentence, however, the Court **DENIES** Petitioner's Motion for Resentencing Anew [Docket No. 217] and Petitioner's Renewal Motion for Resentencing Anew

---

[1]  In its brief, the Government resurrects its argument "that the statute of limitations must be equitably extended because Silva represented that he had signed a waiver excluding the time between September 22, 2005 and October 22, 2005." <u>Silva</u>, 2009 WL 3340150, at *2.  As the Court explained in its ruling on Silva's Motion to Vacate, "The government learned that this was not the case on October 6, 2005.  The government's theory of promissory estoppel might extend the statute of limitations until the next meeting of the grand jury.  Here, the government waited three weeks to seek an indictment after learning that he had not signed the waiver, but does not provide any information that a grand jury was not available until then." <u>Id.</u>  The government's brief indicates that although Silva was indicted on October 27, 2005, a grand jury was sitting on October 11, 2005, and the health care fraud grand jury was sitting on October 20, 2005.  As a grand jury (in fact, the health care fraud grand jury) was available a week before the Government sought an indictment, the Government's argument fails.

[Docket No. 223].

## II. DISCUSSION

For the reasons discussed in the Court's October 15, 2009 Memorandum and Order, counsel's failure to raise a statute of limitations defense as to Counts Three, Four, and Five fell below "an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). "Where, as here, an attorney fails to raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands." Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (finding ineffective assistance where counsel failed to object to the government's untimely filing of an information charging a mandatory minimum enhancement under 21 U.S.C. § 841). As this failure to object led to three convictions that would otherwise have been time-barred, there is undoubtedly a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The convictions on Counts Three, Four, and Five must be vacated.

Although some of Silva's counts of conviction must be vacated, his sentence need not be modified. Pursuant to §3D1.2 of the 2006 sentencing guidelines, the PSR determined that Silva's conduct fell into two groups, the crimes related to

-3-

Silva's 1999-2000 scheme and the crimes related to Silva's 2004-2005 scheme.  The 1999-2000 conduct included Counts 1, 3-12, and 16-21.  The 2004-2005 conduct included Counts 2, 14, and 15.

The 1999-2000 conduct was comprised of counts involving obtaining controlled substances by fraud (Counts 1 and 3-12), governed by §2D2.2, which were grouped together pursuant to §3D1.2(b), and counts involving health care fraud and identity theft (Counts 16-21), governed by §2B1.1, which were grouped together pursuant to §3D1.2(d).  Pursuant to §3D1.2(b), both sets of counts were grouped together.

Under §3D1.3(a), the applicable offense level for the group is determined by calculating the offense level for the most serious of the counts comprising the group.  For those counts governed by §2D2.2, the base offense level was 8.  A two level increase was applied for Silva's role as an organizer, leader, manager, or supervisor of the offense, leaving a total offense level of 10.

For those counts governed by §2B1.1, the base offense level was 7.  The base offense level was raised by six levels pursuant to §2B1.1(b)(1)(D) because the amount of fraud was greater than $30,000.  Two more levels were added for Silva's use of a means of identification under §2B1.1(b)(10).  Finally, two more levels were added for Silva's role as an organizer or leader of the crimes.  This resulted in a total offense level of 17.  Because

-4-

this offense level is higher, under §3D1.3(a) it is the applicable offense level for the group.

The 2004-2005 conduct was comprised of counts involving obtaining controlled substances by fraud (Counts 2, 14, and 15), governed by §2D2.2, which were grouped together pursuant to §3D1.2(b).  The base offense level was 8.  A two level increase was applied for Silva's role as an organizer, leader, manager, or supervisor of the offense, leaving a total offense level of 10, which is the applicable offense level for the group.

Because the offense level for the 1999-2000 conduct was higher than the offense level for the 2004-2005 conduct, under §3D1.4 the offense level for the 1999-2000 conduct, 17, was the starting combined offense level.  Pursuant to §3D1.4, Silva received 1 unit for the 1999-2000 conduct.  Silva also received one half unit for the 2004-2005 conduct because it was between 5 and 8 levels less serious than the 1999-2000 conduct.  Silva's 1.5 units increased his offense level by 1, for a total combined offense level of 18.

Silva had a criminal history category of VI.  His guidelines sentencing range for Counts 1-12 and 14-21 was thus 57-71 months. Counts 23 and 24, the aggravated identity theft counts, were not included in the grouping analysis under §3D1.1(b)(1) because the relevant statute, 18 U.S.C. §1028A, specifies a term of imprisonment to be imposed.  Each count mandates a 24 month term

of imprisonment to run consecutively to any other term of imprisonment, but, in the discretion of the court, the terms imposed for such counts may run concurrently with each other. The convictions for aggravated identity theft under Counts 23 and 24 thus increased the guidelines range by 24 months to 48 months, to between a range of 81 to 95 months and a range of 105 to 119 months.  The Court sentenced Silva to the low end of the lower range, 81 months.

Vacating Silva's convictions on Counts Three, Four, and Five does not affect the sentence.  The Court at sentencing found that for the 1999-2000 conduct, the amount of fraud was $35,520. Counts Three, Four, and Five involved a combined amount of fraud of $5,070.  Deducting this amount from the total leaves a final amount of fraud of $30,450, still greater than the $30,000 necessary to trigger the six level increase pursuant to §2B1.1(b)(1)(D).  Moreover, the conduct underlying Counts Three, Four, and Five can be considered as relevant conduct.  See United States v. Watts, 519 U.S. 148, 157 (1997) (holding that sentencing courts may consider the conduct underlying acquitted counts as relevant conduct).  As vacating Counts Three, Four, and Five does not change the reasoning underlying the Court's sentence, no resentencing is necessary.

**ORDER**

The Court hereby **VACATES** Petitioner's conviction on Counts Three, Four, and Five.   As vacating the counts does not alter Petitioner's sentence, the Court **DENIES** Petitioner's Motion for Resentencing Anew [Docket No. 217] and Petitioner's Renewal Motion for Resentencing Anew [Docket No. 223].

 **/s Patti B. Saris**
Patti B. Saris
United States District Judge